IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GENO LAMAR DEMONS, JR.,<br><br>Defendant. | CRIMINAL ACTION FILE<br><br>NO. 1:21-CR-129-MHC-JKL |

## ORDER

This action comes before the Court on the Final Report and Recommendation ("R&R") of Magistrate Judge John K. Larkins III [Doc. 81] recommending that Defendant Geno Lamar Demons, Jr. ("Demons")'s Motion to Suppress Statements and Physical Evidence [Doc. 63] be denied.  The Order for Service of the R&R [Doc. 82] provided notice that, in accordance with 28 U.S.C. § 636(b)(1), the parties were authorized to file objections within fourteen (14) days of the receipt of that Order.   On February 28, 2022, Demons filed his Objections to the R&R ("Def.'s Objs.") [Doc. 83].

I.   **LEGAL STANDARD**

In reviewing a Magistrate Judge's R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings

or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)). If there are no specific objections to factual findings made by the Magistrate Judge, there is no requirement that those findings be reviewed de novo. Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993) (citations omitted). Absent objection, the district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and may accept the recommendation if it is not clearly erroneous or contrary to the law. FED. R. CRIM. P. 59(a). In accordance with 28 U.S.C. § 636(b)(1) and Rule 59 of the Federal Rules of Criminal Procedure, the Court has conducted a de novo review of those portions of the R&R to which Defendant objects and has reviewed the remainder of the R&R for plain error. See United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

## II. DISCUSSION

At the evidentiary hearing conducted by Judge Larkins on October 15, 2021, the following facts were undisputed:

- Jake Lee ("Lee"), an officer with the Cartersville Police Department, and Brian Hall ("Hall"), an officer with the City of Commerce Police Department, were assigned as Drug Task Force Officers ("TFOs") to the Atlanta Division of the Drug Enforcement Administration ("DEA") at the time of Demons's arrest. Tr. of Evidentiary Proceedings (Oct. 15, 2021) ("Hr'g Tr.") [Doc. 73] at 50[1], 95.

- Following an operation involving the purchase of fentanyl by an undercover agent, Demons and Raymond Hicks ("Hicks") were arrested on January 14, 2021. Id. at 51-54, 97.

- At the time of his arrest, Demons was read his Miranda[2] rights, declined to speak with any officers, and requested an attorney to be present. Id. at 20, 29. Demons was transported to the Atlanta City Jail, along with Hicks, where they remained overnight. Id. at 20, 54-55. While at the jail, Demons and Hicks agreed to cooperate with the DEA. Id. at 20-21, 30, 45.

---

[1] The page references to the hearing transcript are to the actual transcript pages rather than the docket entry pages.

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

3

- On January 15, 2021, Demons and Hicks were taken to the DEA's holding facility in the Richard B. Russell Federal Building where they were separately interviewed. Id. at 22, 54, 57, 97-98. They were not handcuffed, had access to a restroom and water, and the agents who spoke with them were unarmed. Id. at 32, 54-55.

- Hicks, who stated that both he and Demons wanted to speak with the agents, was interviewed first. Id. at 57, 59.

- Demons was then interviewed by TFOs Lee and Hall. Id. at 59-60, 99-100. Prior to the interview, Lee called the Assistant United States Attorney, and the two agreed that Demons should be reread his Miranda rights and have Demons sign a form waiving those rights. Id. at 58, 75.

- Demons, who was dressed in the same civilian clothes he was wearing on the night of his arrest, was not handcuffed and was taken to a room to sit at a round table with Lee and Hall, who both were not in uniform and had no weapons. Id. at 59, 64.

- Demons completed the 11th grade and has no problem in understanding the English language. Id. at 28.

4

- Lee read each of the <u>Miranda</u> rights to Demon out loud, and Demons signed the <u>Miranda</u> form and separately initialed each line, indicating that he had the right to remain silent, that anything he said could be used against him in court, that he had the right to seek advice of a lawyer and have that lawyer with him during questioning, and he would be appointed an attorney if he could not afford one. Advice of Rights, Gov't Ex. 1 [Doc. 68-1]; Hr'g Tr. at 34-36, 38, 65-66, 98-99, 101-02.

- Demons also signed a form declining the opportunity to have the interview recorded. Recording Declination, Gov't Ex. 2 [Doc. 68-2]; Hr'g Tr. at 36-37, 66-67, 103.

- Demons also signed a form giving his consent to search his three iPhones, and provided the password next to each designated iPhone on the form. Consent to Search, Gov't Ex. 3 [Doc. 68-3]; Hr'g Tr. at 37, 68, 103-04.

- During the subsequent interview, Demons revealed incriminating information, and told the agents that he owed a drug source a significant amount of money, and Lee asked Demons to contact the source and left Lee's phone number. Hr'g Tr. at 24, 47, 90, 111-12.

5

      Lee indicated that he was telling Demons that he wanted to work with Demons which "would be some form of cooperation." Id. at 119.

- After the interview, Demons made his initial appearance and was released on bond. Waiver of a Prelim. Hr'g [Doc. 4]; Appearance Bond [Doc. 6]; Order Setting Conditions of Release [Doc. 7].

- Lee asked Demons to tell his drug source that Demons was out of town and avoided arrest and, after being released on bond, Demons contacted Lee by telephone call and text messaging, and Demons sent "voice clip calls" between him and Demons's drug source. Hr'g Tr. at 25, 82-84; Text Messages, Def.'s Ex. 5 [Doc. 69-3].

- On January 25, 2021, Demons and his attorney met at the United States Attorney's Office for a proffer session. Hr'g Tr. at 25-26. Demons and his counsel were presented with a letter at that time which they both signed. Id. at 26, 41; Letter from Calvin A. Leipold III to Colin Garrett (Jan. 20, 2021) ("Proffer Letter") [Doc. 68-4]. The letter began by stating:

> Your client, Geno Demons, is scheduled for a proffer interview for the purpose of providing information he may have regarding possible violations of law, including a conspiracy to distribute heroin. **This is not a cooperation agreement** and this agreement does not apply to any

> previous statements your client may have made to law enforcement officers.

Proffer Letter at 1.

- Although it was DEA's intent to use Demons as a cooperating witness, DEA chose to cease working with Demons shortly thereafter. Tr. Hr'g on Def.'s Mot. for Bond [Doc. 74] at 20.

There were factual discrepancies between the testimony of Demons and TFOs Lee and Hall at the evidentiary hearing on the motion to suppress. First, with respect to who initiated the discussion about Demons speaking with Lee on the morning of January 15, 2021, Demons testified that "Detective Lee approached me and asked me would I like to help myself and cooperate," while Lee testified that Demons was the one who approached him about cooperating. Hr'g Tr. at 21, 33, 58, 74.

Second, Demons testified that he initially did not want to sign the Miranda waiver and consent to the search of his phones because "I told [Lee] I didn't want to get into any additional trouble," but Lee told him "it wouldn't look good if he had to go get a warrant from a judge in order to get my phone." Id. at 22. Demons stated that Lee told him "it would be okay to sign the form, that we were going to be working together. So I was under the impression that we were going to be

7

working together so I wouldn't get into any trouble for allowing him to do it. I thought by me cooperating, that I needed to be open with him." Id. at 22-23. Demons also testified that he was told he "had to sign those forms to get a consent bond" and that the Government would not be able to use any information from his phone against him. Id. at 23-24. On the other hand, Lee testified that he had no authority to offer a cooperation agreement to Demons (and had never negotiated one in his eight years on the task force), that he did not make any promises to Demons in exchange for Demons signing the Miranda waiver or consent to search Demons's phones, including any promise that Demons would be released on bond, nor made any statement about "it would not look good" if Demons did not sign the forms. Id. at 58, 69-70. Prior to Demons signing the forms, Lee testified that he went over the forms in detail and Demons signed each freely without expressing any confusion and did not seek counsel. Id. at 65-66, 68. Hall's testimony was consistent with Lee's on these points. Id. at 101-105.

## III.   DEMONS'S OBJECTIONS

### A.   Judge Larkins's Credibility Determinations

In his first objection, Demons asserts that Judge Larkins erred in finding that Lee and Hall were credible witnesses and that this Court should conduct another

evidentiary hearing to observe the officers' testimony and demeanor. Def.'s Objs. at 1-2.

To the extent that Defendant's objections call into question the Magistrate Judge's findings concerning the credibility of Lee's and Hall's testimony, "[i]n evaluating the factual version of events between the law enforcement officer[ ] and [the defendant], we should defer to the magistrate judge's determination unless his understanding of the facts appears to be 'unbelievable.'" United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002) (citing United States v. Rivera, 775 F.2d 1559, 1561 (11th Cir. 1985)). Judge Larkins found as follows:

> [T]he undersigned finds it compelling that both officers testified consistently and unequivocally that they did not make any promises to Mr. Demons that things he said could not be used against him; that there was no cooperation agreement with Mr. Demons; and that TFO Lee was not even authorized to negotiate a cooperation agreement, having never done so during his eight years as a TFO. On top of this, the documentary evidence from the interview supports the officers' version of the events—in particular, the Miranda waiver Mr. Demons initialed line-by-line and signed at the outset of his interrogation specifically advised him that the "[a]nything you say can be used against you in court," and Mr. Demons checked a box indicating that he would be "willing to freely and voluntarily answer questions." Simply put: Mr. Demons's contention that the officers told him that what he said or provided to them could not be used against him is not credible.

R&R at 17-18 (internal record citations and footnotes omitted).

The reasons given by the Magistrate Judge in finding Lee's and Hall's testimony to be credible are reasonable. See R&R at 5-8; see also United States v.

9

Emanuel, 440 F. App'x 881, 883 (11th Cir. 2011) (according "substantial deference" to the credibility determinations made by the magistrate judge where the defendant "failed to show that the magistrate [judge]'s understanding of the facts is not plausible or permissible . . . ."). This is not one of those "rare cases" in which the transcript of the evidentiary hearing presents an articulate basis for rejecting the Magistrate Judge's resolution of credibility. United States v. Marshall, 609 F.2d 152, 155 (5th Cir. 1980)[3]; see also United States v. Cofield, 272 F.3d 1303, 1306 (11th Cir. 2001) ("This is not the 'rare case' discussed in Marshall, as the transcript here provides no basis to reject the magistrate judge's credibility findings."). The R&R explains why Judge Larkins chose to believe the officers over the defendant; moreover, there is nothing in the report that would indicate that the Magistrate Judge summarily dismissed Demons's testimony strictly because he was the defendant and Lee and Hall were law enforcement officers. Ramirez-Chilel, 289 F.3d at 750.

This Court finds no reason to hold another evidentiary hearing. Indeed, the United States Supreme Court has "made clear that § 636(b)(1) permits the district

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

court to adopt the credibility findings made by a magistrate judge without conducting a new hearing before making a final determination." Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1245 (11th Cir. 2007) (citing United States v. Raddatz, 447 U.S. 667 (1979)). As explained in Raddatz, "the statute calls for a *de novo* determination, not a *de novo* hearing." 447 U.S. at 674. And, as Demons concedes, Eleventh Circuit precedent requires a district court to conduct a second evidentiary hearing only before *rejecting* a magistrate judge's credibility determinations. United States v. Powell, 628 F.3d 1254, 1257 (11th Cir. 2010); Cofield, 272 F.3d at 1306. Consequently, Demons's first objection is **OVERRULED**.

### B. Whether Demons's Statements Were Made in Accordance With An "Informal Cooperation Agreement."

In his second objection, Demons claims that Judge Larkins erred in finding that Demons's statements to Lee and Hall "were not immunized" and were made pursuant to an "informal cooperation agreement." Def.'s Objs. at 3-6. According to Demons, he reasonably expected that his cooperation would not be used against him because the agents offered him an opportunity to "work with" them. Id. at 3, 5.

"The construction of proffer agreements, like plea agreements, is governed generally by the principles of contract law, as we have adapted it for the purposes

11

of criminal law." United States v. Pielago, 135 F.3d 703, 709 (11th Cir. 1998). The Court must measure the terms of any possible agreement "by objective standards, not the subjective beliefs of the parties." United States v. Weaver, 905 F.2d 1466, 1473 (11th Cir. 1990). Contrary to what Demons may have personally believed at the beginning of his interview with Lee and Hall, there is little in what was said to Demons (again, crediting the testimony of Lee and Hall and the forms signed by Demons) that would objectively lead someone to conclude that any sort of immunity was promised by the officers. Indeed, Demons admits that he and Hicks discussed cooperating with the DEA the night before Demons was interviewed. The Miranda waiver, which was also gone over orally with Demons by Lee, specifically indicated that anything Demons said could be used against him in court. Lee and Hall both testified unequivocally that they made no promises of any kind to Demons that if he cooperated his statements would not be used against him, that he would be released on bond, or that he would obtain a more lenient sentence. Finally, the proffer letter presented to and signed by Demons just five days later specifically stated that it was not a cooperation agreement and that it superseded any prior promises or agreements between the parties.[4]

---

[4] Although "not making an argument that [Agent Brown's] description of the agreement" at Demons's bond hearing that there was "essentially an agreement to cooperate" in any way "binds the Government," Demons still asserts that it was

12

Based on the foregoing, Demons's second objection is **OVERRULED**.

## C. Voluntariness of Demons's Statements

Demons's third objection is that Judge Larkins erred by finding that Demons's statements to Lee and Hall were voluntary. Def.'s Objs. at 6. Demons bases his objection entirely by crediting his own testimony that Lee and Hall "induced his self-incriminating statements by promising Mr. Demons that they would not be used against him." Id. As the Court has previously discussed, Judge Larkins did not abuse his discretion by finding that Demon's testimony was not credible.

The Supreme Court has articulated a two-part inquiry to determine whether a waiver is made voluntarily, knowingly, and intelligently:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

---

somehow evidence that some bargain was struck. Def.'s Objs. at 6; Tr. of June 24, 2021, Bond Hearing [Doc. 74] at 12. As stated by Judge Larkins, Agent Brown did not participate in any interaction with Demons on January 14 or 15, 2021, so the observation does little to establish the existence of any cooperation agreement, particularly in the face of the consistent testimony of Lee and Hall, who were the ones who spoke with Demons on those days.

13

Moran v. Burbine, 475 U.S. 412, 421 (1986). In this case, after reviewing the entire record, the Court finds that Demons's Miranda waiver was voluntary. There was no coercive conduct, application of physical force, threats, coercion, or promises. Jones, 32 F.3d at 1516-17 (citation omitted). Demons was aware of his rights and the consequences of relinquishing those rights.

Even discussions about the possibility of cooperating and how it could be of help to a defendant does not make a defendant's statements involuntary. United States v. Mercer, 541 F.3d 1070, 1075-76 (11th Cir. 2008) (citing United States v. Davidson, 768 F.2d 1266, 1271 (11th Cir. 1985)). See also United States v. Nash, 910 F.2d 749, 752 (11th Cir. 1990) (telling defendant "that cooperating defendants generally 'fared better time-wise'" did not amount to illegal inducement); Davidson, 768 F.2d at 1271 (law enforcement assurance that "the accused's cooperation would be passed on to judicial authorities and would probably be helpful to him is not a sufficient inducement so as to render a subsequent incriminating statement involuntary"); United States v. Graham, 323 Fed. Appx. 793, 801 n.5 (citing with approval United States v. Jaswal, 47 F.3d 539, 542 (2d Cir. 1995), which held, "there is no inconsistency between the required warning that a defendant's statement may be used against him and a further statement that cooperation can help him. Both are true."). The Court concludes that, under the

14

totality of the circumstances, it is apparent that Demons's statements were not a product of deception or coercion, and Demons made a free and rational choice to provide statements to the DEA task force officers. Demons's third objection is therefore **OVERRULED**.

D.    **Search of Demons's iPhones**

Demons's fourth objection is to Judge Larkins's finding that Demons voluntarily consented to the search of his iPhones. Def.'s Objs. at 7. Demons's objections are, for the most part, based on the same reasons for his contention that his statements were involuntary, which has been rejected in the prior discussion. Demons also asserts that, unlike the Miranda form waiver, the consent to search form did not state that the evidence on the phones could be used against him. Id.

"While the Fourth Amendment prohibits unreasonable searches, a search is reasonable and does not require a warrant if law enforcement obtains voluntary consent." United States v. Morales, 893 F.3d 1360, 1367 (11th Cir. 2018) (internal quotation marks and alteration omitted). That is, to be voluntary the consent must be "the product of an essentially free and unconstrained choice." United States v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001) (internal quotation marks omitted). "But beyond that, there is no neat talismanic definition of voluntary

consent." Morales, 893 F.3d at 1367 (internal quotation marks and alteration omitted). A court should consider the totality of the circumstances, including:

> "[the] voluntariness of the defendant's custodial status, the presence of coercive police procedure, the extent and level of the defendant's cooperation with police, the defendant's awareness of his right to refuse to consent to the search, the defendant's education and intelligence, and, significantly, the defendant's belief that no incriminating evidence will be found."

United States v. Spivey, 861 F.3d 1207, 1213 (11th Cir. 2017) (internal quotation marks omitted).

Once again, this Court agrees with Judge Larkins that Demons's consent to search his iPhones was voluntary. It is significant that immediately before he signed the consent to search form, he was provided his Miranda warnings and signed the Miranda waiver form, which specifically stated that anything he said could be used against him. Even after being informed of his right to remain silent, Demons elected to speak with the officers. Demons was cooperative and, as previously discussed, was not coerced in any manner to either speak to the officers or to consent to the search of his phones. Demons voluntarily provided his passcodes to unlock his phones, did not voice any objections, and did not rescind his consent in any way. "Considering the totality of these facts and circumstances, and comparing this encounter to more coercive circumstances that have nonetheless been found to be consensual, the Court finds that [the defendant] freely

and voluntarily consented to a search . . . ." United States v. Rodriguez-Alejandro, 664 F. Supp. 2d 1320, 1338 (N.D. Ga. 2009), adopted at 1326 (citations omitted)

Therefore, Demons's fourth objection is **OVERRULED**.

### E.   Whether Statements Were Made Pursuant to Plea Negotiations

Finally, Demons objects to Judge Larkins's finding that Demons's inculpatory statements were made pursuant to plea negotiations under Rule 410 of the Federal Rules of Evidence. Def.'s Objs. at 7-8. Rule 410 provides that statements made during the course of plea negotiations are not admissible against the defendant who participated in the plea discussions. See United States v. Artis, 261 F. App'x. 176, 177 (11th Cir. 2008) (citing FED. R. EVID. 410) (internal quotation marks omitted) ("[A]ny statement made in the course of plea discussions with an attorney for the prosecuting authority which do[es] not result in a plea of guilty is not admissible as evidence in a criminal trial.").

To determine whether a discussion should be characterized as a plea negotiation the trial court must "determine, first, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonable given the totality of the objective circumstances." United States v. Merrill, 685 F.3d 1002, 1013 (11th Cir. 2012) (quoting United States v. Robertson, 582 F.2d 1356, 1366 (5th Cir. 1978)).

17

Not every discussion between an accused and an agent for the Government is a plea negotiation; "[t]here is plea bargaining only when, 'the accused contemplates entering a plea to obtain a concession from the government (and) the government contemplates making some concession to obtain the accused's plea.'" United States v. Cross, 638 F.2d 1375, 1380 (5th Cir. 1981) (quoting United States v. Robertson, 582 F.2d 1356, 1366 (5th Cir. 1978)). Indeed, at the time of the discussion between Demons and Officers Lee and Hall on January 15, 2021, there is no evidence before the Court that Demons had been charged with a specific offense.

The totality of the objective circumstances show that the statements made by Damons to Lee and Hall were not made in the course of plea negotiations. Demons admitted as much during the evidentiary hearing:

Q. Nobody told you in that interview the prosecutor promised you X?

A. The prosecutor?

Q. The prosecutor says anything?

A. No.

Q. Nobody told you that you were negotiating a plea?

A. Negotiating a plea?

Q. A plea.

A. No. I was told that we were going to be working together. Not those words, no.

Hr'g Tr. at 40-41. Lee and Hall both testified that they did not make any promises relating to a lesser sentence if Demons cooperated with the officers. Regardless of Demons's subjective belief that his willingness to assist the DEA would result in a lesser charge, the totality of the objective circumstances fail to show that the parties were engaged in plea discussions so as to prevent the use of statements derived from those discussions under Rule 410.

Accordingly, Demons's fifth objection is **OVERRULED**.

## IV. CONCLUSION

Accordingly, after a de novo review of those portions of the R&R to which Demons objects, the Court **OVERRULES** the objections [Doc. 83]. Finding no clear error in the remaining portions of the R&R, the Court **ADOPTS** the R&R [Doc. 81] as the Opinion and Order of the Court.

It is hereby **ORDERED** that Defendant Geno Lamar Demons, Jr.'s Motion to Suppress Statements and Physical Evidence [Doc. 63] is **DENIED.**

It is further **ORDERED** that the time between the date the Magistrate Judge certified Defendant ready for trial on February 14, 2022, and the issuance of this Order, shall be excluded in calculating the date on which the trial of this case must commence under the Speedy Trial Act because the Court finds that the delay is for

19

good cause, and the interests of justice in considering Defendant's objections to the Report and Recommendation outweigh the right of the public and the right of the Defendant to a speedy trial, pursuant to 18 U.S.C. § 3161 et seq.

**IT IS SO ORDERED** this 17th day of March, 2022.

_____
MARK H. COHEN
United States District Judge